# In the United States Court of Federal Claims

No. 17-1946C

(Filed: June 25, 2019)

|  |  |  |
|---|---|---|
| **NICOLAS A. BOGGS**, *et al.*, | ) | Fair Labor Standards Act, 29 U.S.C. §§ 201-219; motion to proceed anonymously. |
|  | ) |  |
| **Plaintiffs,** | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| **UNITED STATES,** | ) |  |
|  | ) |  |
| **Defendant.** | ) |  |
|  | ) |  |

Linda Lipsett, Bernstein & Lipsett, P.C., Washington, D.C., for plaintiffs. With her were Jules Bernstein and Michael Bernstein, Bernstein & Lipsett, P.C., and Daniel M. Rosenthal and Alice Hwang, James & Hoffman, P.C., Washington, D.C.

Ashley Akers, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her were Joseph H. Hunt, Assistant Attorney General, Civil Division, and Robert E. Kirschman, Jr., Director, and Tara K. Hogan, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Senior Judge.

Plaintiffs Nicolas A. Boggs and 240 other individuals are current or former employees of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") who are or were employed as Intelligence Research Specialists, Industry Operations Investigators, Industry Operations Intelligence Specialists, or Senior Operations Officers ("ATF Agents"). They bring suit on behalf of themselves and all others similarly situated seeking back pay, liquidated damages, interest, and attorneys' fees and costs for violations of the overtime pay requirements of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201-219.

Pending before the court is the ATF Agents' motion to allow them to proceed anonymously. Mot. for a Protective Order & to Permit Pls. & Putative Class Members to File their Claims Anonymously ("Pls.' Mot.") at 1, ECF No. 90. The ATF Agents seek to shield their identities and home addresses from public disclosure, arguing that the nature of ATF's mission makes all employees and their families "targets for attacks and harassment by violent criminals and criminal organizations." *Id*. at 1. The United States (the "government") has responded in

opposition. Def.'s Resp. to [Pls.' Mot.] ("Def.'s Opp'n"), ECF No. 91. After the ATF Agents replied, *see* [Pls.' Reply to Def.'s Opp'n] ("Pls.' Reply"), ECF No. 92, the court held a hearing on June 6, 2019.

## BACKGROUND[1]

ATF classified employees in the four job titles at issue as exempt from the FLSA until it changed course and reclassified the positions as non-exempt on May 1, 2018. *See Boggs v. United States*, 139 Fed. Cl. 375, 377 (2018). Four ATF employees representing two of the job titles at issue initiated the suit on December 14, 2017. *See* Compl. In due course, additional ATF employees joined, *see, e.g.*, Pls.' Unopposed Mot. for Leave to File Notices of Additional Consents, ECF No. 51, and in August 2018, the court certified a collective action for employees of ATF in the now-four job titles, *Boggs*, 139 Fed. Cl. at 379. More ATF employees subsequently joined with the latest additions occurring in November 2018. *E.g.*, Pls.' Unopposed Notice of Filing Additional Party-Pls. & Their Consent to Sue Forms (Nov. 20, 2018), ECF No. 83. Presently, there are 241 named plaintiffs in this collective action. *See* Pls.' Reply at 4.

Also in August 2018, the parties jointly requested entry of a protective order, to permit the government to release to plaintiffs' counsel personal information pertaining to the ATF Agents that was covered by "the Privacy Act, 5 U.S.C. § 552a, and other laws, rules, or regulations." Joint Mot. for a Protective Order, ECF No. 42. The court granted the motion on August 22, 2018. Protective Order (Aug. 22, 2018), ECF No. 44.

On April 17, 2019, more than 16 months since filing the original complaint, eight months after issuance of the first protective order, and five months since the last addition of plaintiffs, the ATF Agents now seek a second protective order that would "seal all pleadings identifying any [p]laintiff by name" and allow the ATF Agents to proceed anonymously. Pls.' Mot. Attach. 1, at 1.[2]

## ANALYSIS

Rule 10(a) of the Rules of the Court of Federal Claims ("RCFC") and the corresponding rule of the Federal Rules of Civil Procedure specify that the "title of the complaint must name all the parties." RCFC 10(a); Fed. R. Civ. P. 10(a). To protect privacy, the court may for good cause "require redaction of . . . information" not subject to automatic redaction, RCFC 5.2(e)(1),

---

[1]The recitations that follow do not constitute findings of fact by the court. Instead, the recited factual elements are taken from the parties' pleadings and from the pending motions and exhibits. No factual disputes are involved with the present motion.

[2]Several consent forms also contain personal information, such as home addresses and personal contact information. The court will treat the ATF Agents' motion as requesting privacy of this information as well, separate from full anonymity.

or seal filings, RCFC 5.2(d), (e)(2).[3]  "The use of pseudonyms in a complaint is contrary to this requirement.  Consequently, courts allow parties to proceed anonymously only where unusual circumstances justify concealing a party's identity."  *Whalen v. United States*, 80 Fed. Cl. 685, 691 (2008) (quoting *Wolfchild v. United States*, 62 Fed. Cl. 521, 552 (2004) (in turn citing *Does I Thru XXIII v. Advanced Textiles Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000))); *see also, e.g.*, *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008) (recognizing a "limited number of exceptions to the general requirement of disclosure") (quoting *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 685 (11th Cir. 2001)); *Advanced Textiles*, 214 F.3d at 1067 (noting an exception "when special circumstances justify secrecy," such as "to protect a person from harassment, injury, ridicule or personal embarrassment") (citations omitted).

In addressing a request by plaintiffs to proceed anonymously, this court has previously "balance[d] the competing interests involved by weighing the party's need for anonymity against the general presumption that parties' identities be available to the public and the likelihood of prejudice to the opposing party."  *Whalen*, 80 Fed. Cl. at 691 (citing *Advanced Textiles*, 214 F.3d at 1068; *Wolfchild*, 62 Fed. Cl. at 552-53).[4]  The court considers five factors: (1) the severity of the harm threatened against the party requesting anonymity; (2) the reasonableness of the fear of that harm; (3) the requesting party's vulnerability to such harm; (4) the public interest in permitting or denying anonymity; and (5) prejudice to the opposing party.  *See, e.g.*, *id.* (quoting *Wolfchild*, 62 Fed. Cl. at 553 (in turn quoting in part *Advanced Textiles*, 214 F.3d at 1068)); *accord Doe No. 1 v. United States*, ___ Fed. Cl. ___, ___, 2019 WL 2128215, at *2 (Fed. Cl. May 15, 2019).  The court evaluates the ATF Agents' request to redact their home addresses or other personal information under the same framework.

### A. Prejudice to the Government from Plaintiff's Anonymity

The ATF Agents summarily aver that the government will not face prejudice.  Pls.' Mot. at 8-9.  The government has not identified any particular prejudice to itself, but instead alleges general prejudice from a growing pattern of granting anonymity in suits against the government

---

[3]Pursuant to RCFC 5.2(a), a filing that contains a social security number, a taxpayer identification number, or financial account number must be restricted to the last four digits.  RCFC 5.2(a).  Further, a birth date and the name of a minor must be restricted to, respectively, the birth year, or the minor's initials.  RCFC 5.2(a).  "A person waives the protection of RCFC 5.2(a) as to the person's own information by filing it without redaction and not under seal."  RCFC 5.2(h).

[4]The Courts of Appeals for the Eleventh and Fifth Circuits have articulated an alternate, but similar, test that allows a "party [to] proceed anonymously in a civil suit in federal court by showing that he 'has a substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings.'"  *Plaintiff B v. Francis*, 631 F.3d 1310, 1315 (11th Cir. 2011) (quoting *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992) (subsequent citation omitted); *accord Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981).  The Court of Appeals for the Third Circuit has outlined a non-exhaustive nine-factor test.  *E.g.*, *Doe v. Megless*, 654 F.3d 404, 408-09 (3d Cir. 2011).

on indefinite grounds, rather than granting anonymity based on articulation of a specific harm. Def.'s Opp'n at 8-9.

Prejudice to the defendant refers to the harm, if any, caused by anonymity to the instant case. *E.g.*, *Wolfchild*, 62 Fed. Cl. at 553-54; *see also Advanced Textiles*, 214 F.3d at 1072. In this case, the government knows the names and addresses of the ATF Agents. The pending motion would only inhibit public disclosure. Proceeding with plaintiffs' names under seal, especially 17 months into litigation, would have negligible ill effects to the government's defense.[5] Concern with allowing assertions of general and indefinite harm to replace the requirement of showing specific harm may, however, implicate the public interest, and is addressed accordingly.

### B. Prejudice to the ATF Agents from Proceeding in their Proper Names

The ATF Agents argue "that by virtue of their jobs, their identities alone implicate legitimate privacy concerns." Pls.' Mot. at 6. The ATF Agents note that the Office of Personnel Management ("OPM") has previously determined in unrelated litigation "that the names of all [ATF employees] must be kept secret to avoid a significant risk of harassment and other harm to the employees." *Id.* at 3, 5-6. The ATF Agents specifically note a "current polarized public conversation on gun control" and cite two comments posted to Twitter within the last year. *Id.* at 3, 7. One comment, invoking ATF's involvement in the 1993 raid and siege of the Branch Davidian compound in Waco, Texas, that left 82 civilians and 4 ATF agents dead, remarked sarcastically, "thank the next @ATFHQ agent you see for violating your rights!," while the second called ATF "a terrorist organization." *Id.* at 3. Further, the ATF Agents argue that they need not show actual threats or harm, but merely a "real possibility." *See* Pls.' Reply at 3 (quoting *Whalen*, 80 Fed. Cl. at 692-93).

The government contends that the ATF Agents "provide no probative evidence or analysis of any actual threatened harm," such as through affidavits or declarations attesting to fears, Def.'s Opp'n at 3-4, nor have they demonstrated that their fears are reasonable or that they are actually vulnerable to harm, *id.* at 6. Rather, it avers the ATF Agents advance "vague" threats. *Id.* at 3-4. The government argues that anonymity is warranted in circumstances that have not been demonstrated here, namely when a "case involves matters that are 'highly sensitive or of a personal nature.'" *Id.* at 4-5 (quoting *Sealed Plaintiff*, 537 F.3d at 190).

A straightforward application of the federal rules of procedure would require the ATF Agents to disclose their identities. *See, e.g.*, RCFC 10(a), Fed. R. Civ. P. 10(a); *Sealed Plaintiff*, 537 F.3d at 189 ("limited . . . exceptions"). To overcome that presumption, the ATF Agents must reasonably show the severity of, and their vulnerability to, harm if they proceed according to the rules. *See Whalen*, 80 Fed. Cl. at 691-92. The harm suggested by the ATF Agents is that of "attacks and harassment by violent criminals and criminal organizations" against themselves and their families. Pls.' Br. at 1. They have not alleged other harms, such as retaliation by their

---

[5] Concerns over the defendant's right to know or confront its accuser, *see, e.g.*, *Megless*, 654 F.3d at 408, are not implicated in this case.

employer or public embarrassment. Accordingly, the court evaluates whether the ATF Agents have reasonable fears of violence and are vulnerable to it.

Actual violence would constitute severe harm. So too would potential violence, if the ATF Agents demonstrated its reasonableness and their vulnerability. The ATF Agents have not, however, adduced evidence of actual or threatened violence to themselves or their families. Their showing suggests potential violence, based upon two comments on Twitter. While both comments are critical of ATF, neither call for violence or even harassment against ATF employees. The ATF Agents may not even know of such comments. As of May 2019, 51 of 56 ATF Agents with a LinkedIn social networking account felt comfortable enough to identify publicly their employment with ATF. Pls.' Reply Ex. A; Hr'g Tr. 5:10 to 7:18 (June 6, 2019).[6] Despite the identities of some plaintiffs being public for more than 16 months, they have provided no evidence that they or their families have been targeted by criminals, criminal organizations, the public, or anyone else.

Several courts have found that communications indicating general disapproval or frustration with plaintiffs were insufficient to justify anonymity. *E.g.*, *Plaintiffs # 1-21 v. County of Suffolk*, 138 F. Supp. 3d 264, 272 (E.D.N.Y. 2015) (finding risk of retaliation to Latino plaintiffs on other grounds but dismissing newspaper articles suggesting anti-Latino sentiment in the community) (citing *Doe v. Pittsylvania Cty.*, 844 F. Supp. 2d 724, 734-38 (W.D. Va. 2012) (letters to the editor of a newspaper and online commentary critical of plaintiff's counsel and indicating opposition to her lawsuit, but with no specific threats, did not suffice)); *see also Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate*, No. 08-00359, 2008 WL 4755674, at *3-4 (D. Haw. Oct. 28, 2008) (rejecting anonymity because the "frustration" expressed was not a threat, where internet comments implied child-plaintiffs would experience violence if they attended the defendant's school and contained other racial remarks), *aff'd*, 596 F.3d 1036 (9th Cir. 2010). Two Twitter comments alone that do not advocate harassment or violence fail to suggest a reasonable fear of violence or that any ATF Agents are vulnerable to violence.

The court accepts that association with the ATF may suffice for particularized harm if ATF Agents had shown that others similarly situated to them have been harmed or threatened based on association with ATF. *E.g.*, *Wolfchild*, 62 Fed. Cl. at 552; *but see Doe v. McKesson*, 322 F.R.D. 456, 457-58 (M.D. La. 2017) (denying a police officer's request for anonymity in a suit for injuries caused by a protestor where the officer expressed a general fear of harm based on actual violence committed against other police officers, but without particularized threats of violence related to filing the instant lawsuit). The ATF Agents, however, have made no showing that other ATF employees have been subjected to violence or threatened credibly with violence simply because of their employment by ATF. *See* Hr'g Tr. 10:9-14, 20-23. It is highly unlikely that this litigation will disclose specific investigative targets and correlate those targets to specific ATF Agents. Even accepting the "current polarized public conversation on gun control," there is no showing how this translates into a reasonable potential for harm against any ATF employees. Absent such evidence, the court lacks a basis to accept that the ATF Agents fear violence or harassment, or whether such fear is reasonable, or whether they or their families are vulnerable to it. *See Whalen*, 80 Fed. Cl. at 692-93 ("To establish cause [to file anonymously], the plaintiffs must present more than the current bare allegation of retaliation;

---

[6]The date will be omitted from further citations to the hearing held on June 6, 2019.

they must present evidence that potential retaliation is a real possibility, such that the court can properly balance that possibility against the public interest in disclosure and any prejudice to the defendant.").[7]

The ATF Agents' arguments contrast with many other cases in which courts have allowed anonymous plaintiffs.  In *Wolfchild*, the court allowed some plaintiffs to join the complaint anonymously where plaintiffs were members of or were seeking membership in Indian communities that opposed their lawsuit and exercised "nearly a plenary power over community membership." 62 Fed. Cl. at 553-54.  The court also noted that the public interest was not impaired by allowing some plaintiffs to remain anonymous when 250 were already named.  *Id.* at 554.  In *Advanced Textiles*, the court allowed the use of pseudonyms by Chinese garment workers in Saipan when they showed that filing labor complaints would subject them to reprisals by their employer and return to China, to be followed by harassment by the Chinese government, to include arrest of them and their families under state secret laws and physical harm.  214 F.3d at 1064-65.  In *Doe v. Stegall*, the court found that "[e]vidence on the record indicates that the [plaintiffs] may expect extensive harassment and perhaps even violent reprisals if their identities are disclosed to [a] community hostile to the viewpoint reflected in plaintiffs' complaint," and that the "threats of retaliation . . . must also be assessed in light of the special vulnerability of these child-plaintiffs." 653 F.2d at 186.[8]  Children and rape victims have been identified as "particularly vulnerable" to merit fictitious names.  *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997); *see also Doe ex rel. Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate*, 625 F.3d 1182, 1189 (9th Cir. 2010) (Kozinski, J. dissenting) (arguing against denial of *en banc* rehearing of denial of anonymity when plaintiffs were children).  In *Casaretti v. United States*, this court allowed federal air marshals to file their opt-in consent forms under seal, having made public only the original plaintiff.  Fed. Cl. No. 15-294, ECF Nos. 5 & 6.  The marshals alleged that by merely revealing their identities, they would violate agency policy regarding disclosure of sensitive information and could thus face retaliation by their employer.  Fed. Cl. No. 15-294, Pl.'s Mot. to File Unredacted Consents Under Seal, ECF No. 5.  In that case, the court found that revealing identities may not only subject each marshal to personal harm through retaliation, but could harm national security and flight safety. *Id.*  While the allegations of harm in *Casaretti* were more general than those made in *Wolfchild*, *Advanced Textiles*, or *Stegall*, it is reasonable to accept that undercover officers disclosing their identities would compromise the public interest in aviation safety or subject them to discipline from their employer because their undercover status would be compromised.

---

[7]To the extent that some ATF Agents could demonstrate particularized harm, the degree of risk likely differs based upon location, job, and whether the ATF Agents are current or former employees.  The ATF Agents, for example, hail from at least 38 states.

[8]*But see Stegall*, 653 F.2d at 186, 188 (Gee, J., dissenting) (noting that, in contrast to these school-children who need not disclose their religious belief to challenge the constitutionally of religious observances in public schools, that "[o]ne may . . . search the annals of school desegregation and civil rights cases in vain before finding 'Roe v. Connor' or 'Doe v. Wallace.'  Those who brought those cases were willing to avouch their causes before the world.").

The ATF Agents rely on a declaration by OPM in a 2012 Freedom of Information Act ("FOIA") suit, *Long v. Office of Personnel Management*, 692 F.3d 185, 192 (2d Cir. 2012), in which a court accepted that OPM need not release the names of federal employees in sensitive occupations. *See* Pls.' Br. at 5-6. In *Long*, two professors routinely accessed an OPM database of federal Executive branch employees to provide transparency on activities, staffing, and spending of the government. *Long*, 692 F.3d. at 188. In 2005, OPM changed its data-release policy to redact the names and locations for all employees in five sensitive federal agencies, to include the ATF, and employees of any other agency who are employed in 24 "sensitive" occupation categories. *Id*. at 189 & n.4. This policy covered over 800,000 federal civilian employees. *Id*. at 189. OPM defended the complaining professors' suit by invoking FOIA Exemption 6, which protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted *invasion* of personnel privacy." *Id*. at 189-90 (quoting FOIA Exemption 6, 5 U.S.C. § 552(b)(6)) (emphasis added). In affirming the district court's decision to permit OPM to redact names, the Court of Appeals for the Second Circuit first addressed the inquiry required when assessing FOIA Exemption 6: initially determine whether the privacy interest was more than "de minimis," and if so, balance it against the "only public interest cognizable under FOIA[, *i.e.*,] 'understanding of the operations or activities of the government.'" *Id*. at 191, 193 (quoting *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989)) (subsequent citation omitted). The court found a "cognizable privacy interest in keeping [the] names from being disclosed wholesale," because "OPM's submissions sufficiently demonstrated that . . . federal employees in the sensitive agencies and occupations face an increased risk of harassment or attack." *Id*. at 192. The court posited that the analysis must be "context specific," because "[n]ames and other identifying information do not always present a significant threat to an individual's privacy interest." *Id*. at 191 (citation omitted). The privacy interest depends "upon the characteristics revealed by virtue of being on the particular list, and the consequences likely to ensue." *Id*. at 192 (quoting *United States Dep't of State v. Ray*, 502 U.S. 164, 176 n.12 (1991)). The court, however, did not opine on the extent of the privacy interest attached to one's name. In its view, disclosure of the names was not relevant to understanding government activities, and the two professors "identified no appreciable public interests militating in favor of the wholesale disclosure of names," and thus even a small privacy interest would outweigh "the nonexistent public interest." *Id*. at 194-95.

The ATF Agents further offer *Wood v. Federal Bureau of Investigation*, 432 F.3d 78, 88 (2d Cir. 2005), also a case brought under FOIA, as additional evidence of judicial recognition that "government investigative personnel have 'an interest against possible harassment and embarrassment.'" Pls.' Mot. at 5 (quoting *Wood*, 432 F.3d at 88). In *Wood*, the court upheld the FBI's decision to withhold from a reporter the identities of specific FBI agents who conducted an investigation into particular individuals. The court found minimal public interest in disclosure under FOIA because "revealing the identities of the investigators assigned to the case would add little to the public's understanding of how the [government] performed its duties," especially when the employees "are of relatively low rank and the identities of the decision-makers have already been disclosed." *Wood*, 432 F.3d at 88. Because the public interest in knowing the agents' identities was "minimal at best," it therefore could not overcome what was at least a "measurable privacy concern" of "possible harassment and embarrassment." *Id.* at 88-89.

The ATF Agents' primary reliance on FOIA cases is telling.  The court accepts that a privacy interest attaches to one's name or address.  But although similarities exist between parts of the inquiry for examining FOIA Exemption 6 and for proceeding anonymously under Rule 10(a), the inquiries are different.  Distinctions fall into two general categories: the public interest and the nature of the disclosure.

The "only public interest cognizable" under FOIA is understanding government operations.  *Long*, 692 F.3d. at 193 (citation omitted).  By contrast, the public interest under Rule 10(a), is a constitutionally-based interest in judicial transparency.  *See, e.g.*, *Stegall*, 653 F.2d at 185-86.  The wholesale disclosure of employee names does not inherently advance the first interest, but the wholesale disclosure of parties' names does advance the second interest.  Therefore, while generalized risk may suffice under FOIA to overcome a minimal public interest in disclosing employee information, generalized risk is insufficient to overcome the public interest in judicial disclosure served by Rule 10(a).

Relatedly, the nature of the disclosure under Rule 10(a) varies from that of FOIA.  Under FOIA, employees are not consulted by the agency about disclosure of their personal information.  They may not even be aware it occurred.  *See, e.g.*, *Long*, 692 F.3d at 189.  FOIA Exemption 6 protects the release of a person's private information by a third-party, *i.e.*, the government.  In contrast, the ATF Agents, like all plaintiffs, chose voluntarily to invoke the courts.  FOIA Exemption 6 exists to preserve anonymity, but Rule 10(a) exists to prevent anonymity.  In other words, government employees subjected to disclosure under FOIA are involuntary participants, whereas plaintiffs voluntarily invoke the courts.

The ATF Agents argue that it is "not fair or reasonable to say that . . . they have forfeited their protection from a risk of harm" by having "merely sought to vindicate their legal rights under the FLSA."  Pls.' Reply at 7-8.  To the contrary, it seems unfair or unreasonable to allow ATF Agents to circumvent the standard applied to other litigants.  Public employees suing under the FLSA should not be allowed to proceed under a presumption of privacy while private sector employees must proceed under a presumption of public disclosure.  The ATF Agents are not unique in using the courts to vindicate legal rights.  Every party in a litigated case has that aim, and every party must proceed in their proper name absent a showing of a reasonable fear of particularized harm.

The ATF Agents cite several cases to argue that suits against the government weigh in favor of anonymity.  Pls.' Reply at 7.  This argument presents a unique challenge for this court, which only hears suits against the federal government.[9]  In contrast to the ATF Agents' contention, some courts have taken the position that suing the government weighs against

---

[9]For example, the ATF Agents cited two pending cases where the court granted anonymity to certain federal employees by virtue of the agency or position in which they worked: *Plaintiff No. 1 v. United States* and *Plaintiff No. 1 v. United States*.  *See* Hr'g Tr. 4:20 to 5:9.  The ATF Agents provided the docket numbers: 18-393C and 18-102C, respectively, but because both cases are sealed and the motions were granted without a public opinion, the court cannot ascertain any background by which to compare or contrast the cases.  The court, however, presumes that the reasoning is likely similar to that of *Doe No. 1 v. United States*, ___ Fed. Cl. ___, 2019 WL 2128215.

anonymity. *E.g.*, *Doe v. Public Citizen*, 749 F.3d 246, 274 (4th Cir. 2014); *Megless*, 654 F.3d at 411. Indeed, most courts that have ruled in favor of anonymity in suits against the government have done so in only a narrow set of circumstances that are inapplicable here. "In only a very few cases challenging government activity can anonymity be justified." *E.g.*, *Stegall*, 653 F.2d at 186 (opposing government-sanctioned religious observances in public schools); *accord Publius v. Boyer-Vine*, 321 F.R.D. 358, 366 (E.D. Cal. 2017) ("Although the government defendant factor can go either way, here, the fact that [d]efendant is a government entity tips the balance in [p]laintiffs' favor because of the nature of this case—a legal challenge to the constitutionality of a California statute as applied to the content of Publius' speech.") (citations omitted); *EW v. New York Blood Ctr.*, 213 F.R.D. 108, 112 (E.D.N.Y. 2003) ("[W]here a plaintiff attacks governmental activity, for example a governmental policy or statute, the plaintiff's interest in proceeding anonymously is considered particularly strong . . . [because] the plaintiff presumably represents a minority interest (and may be subject to stigmatization), and there is arguably a public interest in a vindication of his rights."). What makes relevant the government's status as defendant are either circumstances implicating a substantial constitutionally-grounded privacy right or claims seeking to vindicate a constitutional right. *E.g.*, *Plaintiff B v. Francis*, 631 F.3d 1310, 1317 (11th Cir. 2011) ("descriptions of the [p]laintiffs in various stages of nudity and engaged in explicit sexual conduct while they were minors"); *Stegall*, 653 F.2d at 186 (challenge to state-sponsored religious observances in public schools, as "religion is perhaps the quintessentially private matter"); *Publius*, 321 F.R.D. at 361 (First Amendment challenge against California law prohibiting disclosure of the addresses and phone numbers of state legislators that plaintiff "might have violated or intends to violate"); *Doe v. Purdue Univ.*, 321 F.R.D. 339, 341-42 (N.D. Ind. 2017) (Fourteenth Amendment Due Process claim involving accusation of sexual assault and implicating plaintiff's sexual history); *New York Blood Ctr.*, 213 F.R.D. at 112 ("embarrassment and fear of stigmatization because [plaintiff] has . . . a sexually and blood-transmitted disease"); *see also Megless*, 654 F.3d at 408 (noting, in affirming the denial of anonymity to a plaintiff challenging the implication by a school district that he was a pedophile, that "courts have allowed pseudonyms [in] cases involving 'abortion, birth control, trans[s]exuality, mental illness, welfare rights of illegitimate children, AIDS, and homosexuality.") (quoting *Doe v. Borough of Morrisville*, 130 F.R.D. 612, 614 (E.D. Pa. 1990)). And invocation of such intimate topics may still fail to qualify for use of pseudonyms. *E.g.*, *Doe v. Merritt Hospitality, LLC*, 353 F. Supp. 3d 472, 474-75, 482 (E.D. La. 2018) (HIV status in an employment discrimination suit). A Fair Labor Standards Act suit regarding the proper amount of overtime compensation, by contrast, implicates none of the concerns identified as relevant for anonymity in suits challenging the government.

The government further contends that "the cat is already out of the bag" considering the identities of ATF Agents have been public for up to 16 months, and that "many plaintiffs post their names, specific positions, and employment at ATF on public social media and the Internet." Def.'s Opp'n at 5, 9 (quoting *Doe v. National Conf. of Bar Examiners*, No. 16-CV-264, 2017 WL 74715, at *3 (E.D.N.Y. 2017)). The ATF Agents argue a right to mitigate harm and counter that public disclosure by 51 should not imperil the rights of the remaining 190. Pls.' Reply at 4-5. The ATF Agents certainly have a right to mitigate harm. But they must nonetheless make a showing of harm to mitigate. If general association with ATF correlated with a potential for harm, the ATF Agents should be able to provide examples after 16 months in which their names and address were publicly available and when at least 51 plaintiffs identified themselves as ATF employees on social media. The lack of such evidence undercuts the reasonableness of their

fears.[10]  Further, there has already been one published opinion in this case, meaning that for at least Mr. Boggs, his association with ATF will remain public.  *See Boggs*, 139 Fed. Cl. at 375.

In sum, because the ATF Agents' suit does not implicate a constitutionally-protected privacy concern, they must show actual harm, credible threats of harm, or that others similarly-situated to them have experienced such conduct based on association.  The ATF Agents' reliance on two non-specific comments on Twitter and the government's past representations of a general potential for harassment for ATF employees, leaves the court with little harm for the court to evaluate and little evidence to inform that evaluation.

### C. Public Interest Regarding Anonymity

The ATF Agents contend that "no specific interest is served by publicly disclosing Plaintiffs' names and addresses," Pls.' Reply at 6, and that the public interest against anonymity is weak because only legal issues are involved, Pls.' Mot. at 8.  The government argues that there exists "a strong public interest in judicial transparency," especially in suits against federal agencies.  Def.'s Opp'n at 7.

Again, it bears repeating that both RCFC 10(a) and its companion in the Federal Rules of Civil Procedure require that the "title of the complaint [must] name all the parties."  RCFC 10(a); Fed. R. Civ. P. 10(a).  "This rule serves more than administrative convenience.  It protects the public's legitimate interest in knowing all of the facts involved, including the identities of the parties."  *Francis*, 631 F.3d at 1315 (quoting *Doe v. Frank*, 951 F.2d 320, 322 (11th Cir. 1992)) (subsequent citations omitted); *accord Sealed Plaintiff*, 537 F.3d at 188-89 (Rule 10(a) "serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly").

While this Fair Labor Standards Act case may not engender widespread attention and knowing the names of the plaintiffs might be of limited concern to nearly all court watchers, as would be true for most other civil cases, the *public* interest is not so limited.  Requiring the ATF Agents to proceed publicly serves the same public interest that is served by disclosure in every other civil case: judicial transparency.  Proceeding in one's proper name facilitates the "customary and constitutionally-embedded presumption of openness in judicial proceedings." *Stegall*, 653 F.2d at 186; *see also Sealed Plaintiff*, 537 F.3d at 189 ("Identifying the parties to the proceeding is an important dimension of publicness.  The people have a right to know who is using their courts.") (quoting *Blue Cross & Blue Shield*, 112 F.3d at 872); Joan Steinman, *Public Trial, Pseudonymous Parties: When Should Litigants be Permitted to Keep Their Identities*

---

[10]This court rejected the government's "cat is already out of the bag" argument in *Doe No. 1 v. United States*.  There, plaintiffs' names had been public for six weeks when plaintiffs filed their motion for a protective order.  *See Doe No. 1*, ___ Fed. Cl. at ___, 2019 WL 2128215, at *2.  In both *Plaintiff No. 1* cases, 13 months and five months had elapsed, respectively, between the complaint and the motion requesting anonymity.  *See* Fed. Cl. Nos. 18-102C & 18-393C.  Even so, the court has not accepted the government's argument.  Rather, it observes the lack of harm after 16 months.  While the court does not suggest a wait-and-see approach to see whether harm develops, if months do otherwise elapse, what actually occurs, or does not occur, becomes relevant to the inquiry.

*Confidential?*, 37 Hastings L.J. 1, 18-22 (1985) (discussing the tensions between pseudonymous litigation and public access, and how use of pseudonyms "may tend to undermine the confidence of the public in the administration of the law," "hampers the structural function of the [F]irst [A]mendment," and may "conflict with the public's right of access to judicial records").

The ATF Agents' contend that prior decisions have found that the "public interest in revealing [p]laintiffs' identities [is] 'virtually non-existent.'" Pls.' Mot. at 8 (quoting *Long v. Office of Pers. Mgmt.*, No. 5:05-cv-1522, 2007 WL 2903924 (N.D.N.Y. Sept. 30, 2007), *aff'd in part*, 692 F.3d 185. Accepting this argument would render the public interest factor inapplicable to most cases, contravening widespread judicial acknowledgement that anonymity deviates from the "customary and constitutionally-embedded presumption of openness in judicial proceedings." *E.g.*, *Stegall*, 653 F.2d at 186. As discussed, the ATF Agents misplace their reliance on *Long*; the public interest served by FOIA differs from the public interest served by Rule 10(a). Thus, *Long*'s analysis cannot be transferred here.

The ATF Agents further argue that this case "involves a particularly weak public interest [because] it involves only legal issues." Pls.' Mot. at 8. While several courts have recognized this proposition, it is inapposite here. Cases that involved "only legal issues" are those that are not fact-sensitive. They are typically instances where plaintiffs challenged the constitutionality of a statute, *i.e.*, where the plaintiff is one of many who could make the challenge and where the results would be widely felt among the public. *Cf. Megless*, 654 F.3d at 410 ("not a purely legal claim"); *see, e.g., Pittsylvania Cty.*, 844 F. Supp. 2d at 731. In contrast, this case by the ATF Agents involves many factual issues. The ATF Agents' are not challenging the FLSA, but whether ATF policies as related to specific employees and circumstances violate the FLSA. The ATF Agents must adduce evidence of their duties, FLSA classifications, and work hours. A dispute could arise over whether a FLSA exemption applies. Seventh Am. Compl. ¶ 55. The ATF Agents' seek liquidated damages, Seventh Am. Compl. at 15, against which ATF can defend by showing good faith and a reasonable basis in classification. The ATF Agents also allege that the ATF acted willfully, Seventh Am. Compl. ¶¶ 60, 62, 69, adding another factual showing to the plaintiffs' burden. The ATF Agents recitation of "involv[ing] only legal issues," Pls. Mot. at 8, ignores the sets of factual issues that could and probably will arise.

Disclosure of the ATF Agents' identities would not hinder the public interest, as it might when a case that could vindicate an important public right would not be brought if plaintiffs had to disclose their identities. *E.g.*, *Stegall*, 653 F.2d at 186 (permitting use of pseudonyms by children who sought to "vindicate establishment clause rights" by opposing religious observances in public schools and where "[e]vidence on the record indicates that the [plaintiffs] may expect extensive harassment and perhaps even violent reprisals if their identities are disclosed."). In this case, the original four ATF employees brought suit in their proper names. Since then, another 237 have joined. And this is hardly the first Fair Labor Standards Act suit brought in this court under the proper name of a government employee who occupied a sensitive position. *E.g.*, *Shea v. United States*, ___ Fed. Cl. ___, 2019 WL 2332249 (May 31, 2019) (Naval Criminal Investigative Services Surveillance Specialist); *Adams v. United States*, 141 Fed. Cl. 428 (2019) (U.S. Border Patrol agents); *Akpeneye v. United States*, 138 Fed. Cl. 512 (2018) (Pentagon Force Protection Agency officers); *Almanza v. United States*, 135 Fed. Cl. 113 (2017) (Customs and Border Protection Officers and Border Patrol Agents). The ATF Agents argue that anonymity serves "the public's interest" by protecting employees whose job is to

protect the public.  Pls.' Mot. at 8.  While the government does have an interest in protecting its employees, along with all people generally who use its courts, the argument presumes that a harm exists, and that the harm suffices to override the public interest in judicial transparency.

Granting anonymity for government employees by virtue of their employer and without a showing of any particularized harm would unduly expand a practice reserved for unique circumstances.  The logic of the ATF Agents could be applied to many government employees. Generic threats from terrorist organization and hostile governments or potential harassment from anti-war protesters could warrant allowing any current or former members of the military to proceed anonymously.[11]   If the "current polarized public conversation on gun control" warrants blanket anonymity for ATF employees, Pls.' Mot. at 3, so too would the polarized public conversations on immigration, environmental regulations and climate change, taxation, and warrants issued by the Foreign Intelligence Surveillance Court, to name a few, in turn justify blanket anonymity for employees of Immigrations and Customs Enforcement, the Environmental Protection Agency, the Internal Revenue Service, or the Federal Judiciary.  It is also questionable why only federal employees should enjoy immunity from RCFC 10(a).  Businesses challenging government procurement decisions might argue that they should be entitled to blanket anonymity to avoid a potential for harassment from their association with certain government agencies, such as the Departments of Defense or Homeland Security, or to avoid the general potential for retaliation by the government when bidding on future contracts.

Plaintiffs could try to distinguish between government employees whose work "involves classified and confidential law enforcement duties" or similar sensitive duties, *see* Pls.' Mot. at 2, 7, and those whose work does not, *see* Pls.' Mot. at 7.  But it is not evident that those expressing non-specific criticisms of a federal agency would make a distinction between employees based on job titles.  Even with such a limitation, a large swath of federal civilian employees would be categorically exempted from having to show anything more than their employer to overcome the requirement of Rule 10(a).[12]   Under the same logic, the exemption should attach to all 1.3

---

[11]For example, "[The Islamic State of Iraq and Syria's] videos and propaganda specifically advocate for attacks against soldiers, law enforcement, and intelligence community personnel." *Current Threats to the Homeland Before the S. Homeland Sec. & Gov't Affairs Comm.* at 2 (2017) (statement of Christopher A. Wray, Director, Fed. Bureau of Investigation), https://www.hsgac.senate.gov/hearings/09/18/2017/threats-to-the-homeland.

[12]The Office of Personnel Management's policy regarding Freedom of Information Act requests for the names of Executive branch employees redacts the names of all employees in five sensitive federal agencies and all other employees in 24 sensitive categories.  *See Long*, 692 F.3d 189.  In 2012, this amounted to 800,000 Executive branch civilian employees, *see id.*, of 2.1 million total civilian employees, *see* Office of Pers. Mgmt., *Sizing up the Executive Branch: FY 2017*, at 4 (2018), https://www.opm.gov/policy-data-oversight/data-analysis-documentation/federal-employment-reports/reports-publications/sizing-up-the-executive-branch-2016.pdf.

million active-duty military members,[13] and to large numbers of other non-federal public sector employees. The exception subsumes the rule, making many government employees members of a protected class based on little more than generalized criticisms of the government.

In sum, transparency in judicial proceedings serves the public interest, and accordingly a presumption favors transparency, as shown by the rule mandating proceeding in one's proper name. Shifting this presumption requires showing that the suit could serve an important public interest but would otherwise not be brought if plaintiffs were required to identify themselves. The ATF Agents' suit indicates the opposite. A present, 241 ATF employees signed onto the suit in their proper names, the last of which joined five months before the anonymity request was made. Accordingly, the public interest weighs against ATF Agents' motion for anonymity.

### D.  Balancing the Interests

The government's interest, as the defendant, is not prejudiced by anonymity. The government is already aware of the litigants' identities. Plaintiffs' motion would only conceal their personal information from the public.

The public interest in judicial transparency is prejudiced by allowing plaintiffs to proceed anonymously. Contrastingly, the prejudice to the public interest from withholding home addresses or personal contact information is less, especially as the court's rules do not contain such requirements. *See* Hr'g Tr. 9:11-19. The public can assess who is using the courts without knowing where litigants reside or how to contract them. Unlike in district court, this court's nationwide jurisdiction preempts any challenges to personal jurisdiction or venue that might make an address particularly relevant.

Although the ATF Agents have alleged severe harm, the showing is generalized and speculative, and the court cannot give controlling weight to the harm or evaluate plaintiffs' vulnerability. Employment may certainly be relevant in showing particularized harm. But, particularized harm must still be shown for the court to deviate from Rule 10(a). The applicable standard should not vary based on the whether a party is employed by the government. Separately, the court recognizes that a greater privacy interest exists in a person's home address and personal contact information. Also, while many plaintiffs may feel comfortable disclosing their association with ATF, it is unlikely that they would do so in conjunction with disclosing their home address or personal contact information.

Accordingly, the balance of interests weigh against plaintiffs' request to proceed anonymously but in favor of their request to seal their home addresses or personal contact information. Plaintiffs' general allegations of harm cannot overcome the public interest in judicial transparency served by requiring plaintiffs to proceed in their proper name. But, because no comparable public interest exists in knowing a plaintiff's home address or personal contact information and because plaintiffs have privacy interests in these respects, the generalized harm

---

[13]*See generally* Defense Manpower Data Ctr., *DoD Personnel, Workforce Reports & Publications*, https://www.dmdc.osd.mil/appj/dwp/dwp_reports.jsp (last visited June 5, 2019) (presenting historical reports of the size of the U.S. military); *see also* Wray, *supra* n.11.

the ATF Agents allege suffices to permit them to seal their home addresses or other personal contact information and to redact that information from any public filings.

## CONCLUSION

For the foregoing reasons, the ATF Agents' motion is GRANTED in part and DENIED in part.  The ATF Agents have not demonstrated sufficient cause for collectively or individually proceeding anonymously.  To protect the home addresses or personal contact information of the ATF Agents, they may seal consent forms or other filings with their home address or personal contact information, and may file under seal additional consent forms or other documents that contain home addresses or personal contact information.  Plaintiffs shall file redacted versions of any sealed documents for public disclosure; where home addresses are redacted, the state, district, or territory of residence or employment must be provided.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Senior Judge